David B. Owens (SBN 275030)
University of Washington School of Law
Civil Rights and Justice Clinic
C/O LOEVY & LOEVY
333 S. Grand, Suite 3310
Los Angeles, CA 90071
david@loevy.com

*Counsel for Plaintiff*

**UNITED STATES DISTRICT COURT FOR THE CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| WILLIAM WOODS,<br>Plaintiff,<br>v.<br>GREG SU; ARMANDO VALDEZ; OSSIOLA CANTRELL; DET. ANGEL-RUMMER; THE CITY OF LOS ANGELES; ANTONIO SANCHEZ; and U.S. BANK, N.A.,<br>Defendants. | No. 2:26-cv-03872-CAS-MAR<br><br>**AMENDED COMPLAINT FOR DAMAGES & OTHER RELIEF**<br><br>**JURY TRIAL DEMANDED** |

Pursuant to 42 U.S.C. § 1983 and 28 U.S.C. §§ 1331, 1367, Plaintiff WILLIAM WOODS, by his undersigned attorneys, complains against Defendants GREG SU; ARMANDO VALDEZ; OSSIOLA CANTRELL; DET. ANGEL-RUMMER; THE CITY OF LOS ANGELES; ANTONIO SANCHEZ; and U.S. BANK, N.A., and states:

## INTRODUCTION

1. Plaintiff William Woods's life changed forever when he was arrested, charged, and wrongfully convicted for nothing but being himself.

2. Plaintiff, the victim of identity theft for decades, was arrested when he

attempted to report that his identity had been stolen and sought help.

3. No reasonable person would have believed that Plaintiff was an identity thief, or that he was not William Woods, but Defendants accused Plaintiff of identity theft, unlawfully disclosed his personal identifying information, and fabricated evidence to support his arrest and subsequent wrongful conviction.

4. The allegations, based on fabricated evidence, upended Plaintiff's life and caused him to spend a total of almost two years—*i.e.*, 575 days—in a California psychiatric hospital and Los Angeles County jail before he pled "no contest" to the charges, wrongfully convicted but released for time served.

5. Plaintiff's conviction was later vacated by a California Superior Court, and Mr. Woods has been deemed factually innocent (of stealing his own identity).

6. This action seeks redress for the damages Plaintiff suffered from his wrongful imprisonment resulting from Defendants' actions.

## JURISDICTION AND VENUE

7. Plaintiff brings this action pursuant to 42 U.S.C. § 1983 and California law to redress Defendants' tortious conduct and the deprivation under color of law of his rights secured by the United States Constitution.

8. This Court has jurisdiction pursuant to 28 U.S.C. § 1331 and § 1367.

9. Venue is proper under 28 U.S.C. § 1391(b). The events and omissions giving rise to his claims occurred within this Judicial District.

## PARTIES

10. Plaintiff William Woods is a 57-year-old man who spent almost two years wrongfully imprisoned for allegedly stealing his own identity. Mr. Woods enjoys collecting and creating jewelry, including precious metals.

11. Defendant Greg Su (#42779) is a current or former officer of the Los Angeles Police Department (LAPD) and employee of the City of Los Angeles, California. Defendant Su engaged in the conduct complained of herein in the course and scope of his employment and under color of law. He is sued in his individual capacity.

12. Defendant Armando Valdez (#43069) is a current or former officer of the LAPD and employee of the City of Los Angeles, California. Defendant Valdez engaged in the conduct complained of herein in the course and scope of his employment and under color of law. He is sued in his individual capacity.

13. Defendant O. Cantrell (#38555) is a current or former Detective of the LAPD and employee of the City of Los Angeles, California. Defendant Cantrell engaged in the conduct complained of herein in the course and scope of his employment and under color of law. He is sued in his individual capacity.

14. Defendant Detective Angel-Rummer (#30866) is a current or former Detective of the LAPD and employee of the City of Los Angeles, California. Defendant Angel-Rummer engaged in the conduct complained of herein in the course and scope of his employment and under color of law. He is sued in his individual capacity.

15. Collectively, Defendants Su, Valdez, and Cantrell Angel-Remmer are referred to as the "Defendant Officers."

16. Defendant U.S. Bank National Association ("U.S. Bank, N.A."), is a subsidiary and primary operating entity of U.S. Bancorp, a financial institution that operates banks throughout the United States, including in California. US Bank, N.A. is liable, via *respondeat superior* and other doctrines for the unlawful conduct of its employees.

17. Defendant Antonio Sanchez is a former assistant bank manager II at the branch of U.S. Bank located on 145 S. Fairfax Ave, in Los Angeles, California. He engaged in the conduct complained of while acting within the scope of his employment at U.S. Bank, N.A.

**18.** Collectively, Defendants U.S. Bank, N.A. and Antonio Sanchez are referred to as "The Bank Defendants."

## FACTUAL ALLEGATIONS

### Plaintiff Is The Victim Of Identity Theft

19. Plaintiff William Woods is a hard-working man who, among other things, has worked for himself and strived to live the American dream as an entrepreneur. Plaintiff attended some college, including in San Diego, as he has sought to achieve dreams.

20. Plaintiff is the victim of identity theft by a man named Matthew Keirans.

21. Plaintiff and Keirans worked together in Albuquerque, New Mexico, when Keirans stole Plaintiff's wallet and began using Plaintiff's identity to evade responsibility for his own illegal conduct.

22. For years, Keirans used Plaintiff's identity to obtain official documentation and as he established a middle-class life in suburban Wisconsin.

23. Meanwhile, Plaintiff moved on with his life and established himself—as himself—in California.

24. In California, between roughly 2009 and 2019, Plaintiff worked various jobs but also had times where he received public assistance. Plaintiff reported himself as a victim of identity theft in California and also had his identity confirmed to obtain public assistance.

25. Upon information and belief, Plaintiff's background in seeking public

assistance and reporting identity theft were available to appropriate officials, including law enforcement and those working in the financial services sector (e.g., those operating large national banks).

**Defendants Illegally Arrest Plaintiff After He Reported His Stolen Identity**

26. As one of his crimes, Keirans opened an account with U.S. Bank in Plaintiff's name which he used to accumulate hundreds of thousands of dollars in debt. None of that debt belonged to Plaintiff.

27. Plaintiff spent years honestly reporting that he was the victim of identity theft, including to credit reporting companies and federal agencies for years at least back to 2014.

28. Plaintiff also honestly lived his life as himself, under his own name. These events made a consistent record of Plaintiff's own identity (as himself). For example, in April 2019, Plaintiff appeared for jury service in Los Angeles.

29. By 2019, Plaintiff had contacted numerous police departments, banks, and other officials.

30. In addition, Plaintiff had repeatedly contacted the California Department of Justice for years in and before 2019 to report he was a victim of identity theft. No authorities ever intervened.

31. Even then, Plaintiff did not stop reporting the ongoing identity theft.

32. In one such instance, on August 20, 2019, Plaintiff went to a branch of Defendant U.S. Bank in Los Angeles, California after discovering from a credit monitoring service that someone had accumulated massive debt in his name.

33. Plaintiff went into the bank to report a crime; and to attempt to *stop* it from occurring. Plaintiff did not attempt to open a separate account or obtain money or any other benefit that would be indicative of someone committing a theft crime.

34. Plaintiff spoke to the assistant bank manager, Defendant Sanchez.

35. In that conversation, Plaintiff informed Defendant Sanchez he was a victim of identity theft and that he wanted to close the accounts fraudulently opened in his name.

36. Plaintiff provided Defendant Sanchez with his California identification and his social security card.

37. Plaintiff also asked Mr. Sanchez for an apology letter from the bank for allowing someone to open an account in his name.

38. Defendant Sanchez determined that the name and social security number provided by Plaintiff matched the social security information associated with the accounts.

39. Inexplicably, Defendant Sanchez proceeded to ask Plaintiff security questions associated with the accounts—which he was informed Plaintiff had not established and that Plaintiff was attempting to close.

40. Naturally, given that the account was set up in Plaintiff's name by an identity thief and Plaintiff was there to *report* that the account was fraudulent, Plaintiff could not possibly correctly answer a security question.

41. Defendant Sanchez proceeded to contact a person he called William Woods (but who we now know was Keirans) through the phone number associated with the account.

42. That fact should have alerted Defendant Sanchez, and any reasonable person, that there was a discrepancy between Plaintiff and the account holder (as Plaintiff had told them).

43. Defendant Sanchez had available to him information that could have and would have corroborated Plaintiff's account, including from financial services

databases like credit bureau information.

44. Sanchez failed to consult this information or reviewed it and ignored it.

45. Either way, rather than proceed with due care or lawfully, Defendant Sanchez provided Keirans with Plaintiff's personal information.

46. Doing so violated basic rules of confidentiality associated with banking, and with investigating a claim of a fraudulent account.

47. Defendant Sanchez then escalated matters further and called the LAPD.

48. In so doing, Defendant Sanchez falsely implicated Plaintiff in forgery and identity theft when Plaintiff was honestly and truthfully reporting that he was the victim of a crime.

49. Defendant Officers Su and Valdez responded to the call and arrived at the bank.

50. There, the Officers Su and Valdez spoke with Defendant Sanchez. These Defendants had available to them evidence of Plaintiff's innocence, including information that Plaintiff had provided, the fact that Plaintiff walked into a bank to *report* a crime; and evidence from electronic databases reflecting Plaintiff's prior reporting of identity theft.

51. Defendants Su, Valdez, and Sanchez then had a conversation about what would happen next. Defendant Sanchez had initiated the criminal legal process against Plaintiff and then Defendants Su and Valdez, worked with Sanchez to see that through.

52. These Defendants decided, by joint agreement, to claim that Plaintiff had tried to steal "William Woods" identity when Plaintiff, who was William

Woods, had come to a bank to report that crime and to attempt to close a bogus account.

53. Among other things, as part of the agreement to turn the world upside down—and to implicate a person reporting a crime as a person committing one—Defendant Sanchez accused Plaintiff of being a criminal despite his innocence.

54. No reasonable person would have believed that Plaintiff was actually trying to steal his own identity by reporting an identity theft and by trying to close an account.

55. No reasonable person would have believed that there was probable cause to arrest Plaintiff for identity theft.

56. Despite this, and pursuant to their agreement with Defendant Sanchez, the Defendant Officers treated Plaintiff as a criminal identity thief.

57. It did not stop there. Instead, Defendants Sanchez, Su, and Valdez expanded the reach of their agreement to Detectives from the LAPD, including Detectives Cantrell and Angel-Rummer.

58. Defendant Sanchez later spoke with the LAPD Detectives, again accusing Plaintiff of criminal conduct and setting out a course of action that falsely implicated Plaintiff in a crime he did not commit.

59. Like Defendants Sanchez, Sue, and Valdez, Defendants Cantrell and Angel-Rummer had available to them databases that would have corroborated that Plaintiff was a victim. Defendant Cantrell even used some of these databased.

60. Yet, the Defendant Officers ignored obvious evidence that Plaintiff was telling the truth that he was William Woods, and that his identity had been stolen. The Defendant Officers knew, or certainly should have known, that Plaintiff was a victim and not a fraudster committing the crime he was reporting.

61. For example, Plaintiff provided Defendants documents showing his name as William _Donald_ Woods, his correct legal name. Defendants had access to information that would have shown this was Plaintiff's correct name. But they did not use it.

62. Instead, Defendants sought more information from the thief (now known to be Keirans) who provided documentation with the wrong name: William _David_ Woods.

63. Defendant Officers, as part of their agreement with Defendant Sanchez, ignored this discrepancy and chose to arrest Plaintiff even though there was no probable cause to support his detention.

64. Defendant Sanchez continued to implicate Plaintiff as a criminal—in the form of a criminal complainant now working with the police—despite evidence that Plaintiff was innocent and that he either knew or should have known.

**Defendants Fabricate Evidence and Cause Plaintiff To Spend Two Years In Jail and a Psychiatric Hospital**

65. To support the arrest, the Defendant Officers wrote reports of their interactions with Plaintiff at the bank and thereafter.

66. These reports included purportedly inculpatory statements that Plaintiff did not make and that mischaracterized what he did tell them, including purporting to treat Plaintiff as having been a criminal and by materially omitting other exculpatory information of which they knew or should have known, or that Plaintiff relayed.

67. As a result of Defendants' conduct, including in their police reports and working with Defendant Sanchez, Plaintiff was charged with felony identity theft under the name "Matthew Kierans," even misspelling the name of the real identity thief.

68. Defendants' reports supplied part of the basis for detaining Plaintiff after the initiation of judicial process, which was prompted by the Defendants acting jointly.

69. These criminal proceedings were initiated at the behest of Defendants, and they continued their work during the criminal proceedings. For example, Defendant Sanchez testified against Plaintiff during a preliminary hearing and, among other things, misrepresented aspects of his conversations with Plaintiff.

70. Plaintiff maintained that he was not Matthew Keirans and was who he actually is: William Woods.

71. Due to Defendants accusations (and fabrications), Plaintiff's insistence that he was himself—prompted by Defendants accusations—tainted the criminal proceedings.

72. Plaintiff was accused, for example, of being incompetent because he maintained he was himself.

73. In 2020, Plaintiff was found not competent to stand trial and was sent to a California psychiatric hospital, where he spent 147 days and was forced to take psychotropic medication by court order. The notion was that Plaintiff should relent in maintaining he was himself.

74. In addition, Plaintiff was held without bail in Los Angeles County jail for 428 days while his prosecution continued.

75. Ultimately, Plaintiff pled no contest to the identity theft charges and was convicted in 2021 and released for time served.

76. Before Plaintiff pleaded "no contest" the Defendant Officers did not reveal to the prosecutor or any judge they had falsely accused Plaintiff, including by misrepresenting their interactions with Plaintiff at the bank.

77. Before Plaintiff pleaded "no contest" and was wrongfully convicted each of the Defendant Officers were aware of the falsity of the case against Plaintiff and had the opportunity to intervene to prevent the wrongful conviction of plaintiff and his continued detention. They failed to intercede.

**Plaintiff Is Exonerated**

78. After his release, Plaintiff was determined to get his identity back and continued challenging his wrongful conviction.

79. At that point, Keirans was employed under Plaintiff's name at the University of Iowa while still using Plaintiff's identity.

80. Plaintiff contacted law enforcement at the University of Iowa and raised the same issues he had raised with the Defendant Officers (before they fabricated their reports).

81. The investigator immediately noted discrepancy between Plaintiff's actual name—William *Donald* Woods— and the name on the Keirans' driver's license William *David* Woods.

82. Simple DNA testing confirmed Plaintiff was himself. Keirans quickly confessed to stealing Plaintiff's identity and later pled guilty to criminal charges.

83. As a result of this investigation, Plaintiff's wrongful conviction was vacated, the charges were dismissed, and Plaintiff was declared innocent by a Los Angeles County Superior Court.

84. During the time between Plaintiff's arrest and exoneration, the Defendant Officers knew they had fabricated evidence, including in their own reports, but failed to disclose these dishonest acts to the prosecution, to Plaintiff, or to Plaintiff's defense attorneys.

**The Policies, Practices, and Customs of The City of Los Angeles**

85. Defendant Officers failed to exercise due care when they fabricated evidence and caused Plaintiff's wrongful conviction.

86. Defendant Officers had a duty to Plaintiff but breached that duty by fabricating evidence to arrest Plaintiff without probable cause and in the face of evidence implicating Keirans, and withholding exculpatory evidence during Plaintiff's prosecution.

87. Defendant City of Los Angeles has inadequate procedures and systems for ensuring officers engage in accurate reporting, in seeking the truth, and disclosure of exculpatory evidence. In the absence of procedural safeguards, Plaintiff was wrongfully charged with a crime that he did not commit due to the City's practices and customs.

88. In addition, the City of Los Angeles failed to adequately train, supervise, or discipline officers such that they feel they can, as they did with Plaintiff, commit acts of misconduct with a sense of impunity. Despite a number of people having been wrongfully convicted, despite various scandals at LAPD officers involving the fabrication of evidence, and despite the City's own audits finding officers fabricating evidence, the City failed to implement an adequate training, discipline, or supervision regime for regulating this misconduct. Instead, despite being well aware of acts of fabrication in basic police documents, the City permitted (and ratified) a custom whereby officers are permitted to pursue criminal charges against people on the basis of fabricated evidence (and without having to disclose the acts of fabrication).

89. The City of Los Angeles indeed has a long history officers to falsely implicating people in crimes they did not commit, including via violating due process by fabricating evidence or suppressing favorable information.

90. These problems are well known and well understood to the city and date back, among other things, to the "Rampart Scandal" in the 1990s when LAPD officers violated due process against myriad people and, in the end, led to more than 100 criminal convictions being vacated.

91. The City of Los Angeles did not meaningfully change its practices—including concerning the violation of due process via fabrication of evidence or the suppression of favorable information to criminal suspects—between the time of the "Rampart Scandal" in the 1990s and 2019 when the Defendant Officers undertook their actions against Plaintiff.

92. Evidence of these defunct processes are well known to the City because it was removed from the "CalGangs" database—a law enforcement tool in California for investigating alleged gang members or gang crimes—because its officers fabricated evidence that went into the database. In 2020, LAPD detectives were in fact indicted for these actions, which were systemic and not localized.

93. Numerous civil rights cases have been filed against LAPD officers alleging wrongful convictions and prosecutions based upon due process violations committed by LAPD officers. Among other things, officers and the City itself have failed in efforts to dismiss various lawsuits involving allegations that LAPD officers—and/or the City's practices have violated the due process rights of the plaintiff and caused their wrongful imprisonment.

94. Like these many other people, Plaintiff alleges that the violation of his rights was pursuant to City policy and practice as well.

**Plaintiff's Damages**

95. As a result of Defendants' misconduct, Plaintiff spent nearly two years in jail and a psychiatric hospital.

96. In that time, Plaintiff's life was upended. Plaintiff was treated as "crazy" for simply maintaining his identity, was subject to forced medication, and was ordered to stop using his own identity.

97. Defendants' actions caused Plaintiff the severe trauma of wrongful imprisonment and the stress of pending criminal charges, the loss of his liberty, actual physical harm and pain, and reputational harm.

98. During that time, Plaintiff's real claims of identity theft went unaddressed for years and he was unable to even attempt to get on his feet.

99. Defendants' misconduct continues to cause Plaintiff physical and psychological pain and suffering, humiliation, emotional harm and great anguish, and other physical and psychological effects which continue to this day.

## LEGAL CLAIMS

### COUNT I
### 42 U.S.C. § 1983 – Fourth Amendment Illegal Detention and Malicious Prosecution Against the Defendant Officers

100. Plaintiff incorporates each paragraph of this complaint as if fully restated herein.

101. In the manner described more fully above, the Defendant Officers, individually, jointly, and in conspiracy with each other, as well as under color of law and within the scope of their employment, accused Plaintiff of criminal activity and exerted influence to initiate, continue, and perpetrate judicial proceedings against Plaintiff without any probable cause for doing so, in violation of his rights secured by the Fourth Amendment (as incorporated by the Fourteenth Amendment).

102. In so doing, the Defendant Officers caused Plaintiff to be deprived of his liberty and detained without probable cause, and subjected improperly to judicial proceedings for which there was no probable cause.

103. The misconduct described in this count was objectively unreasonable and was undertaken intentionally and with recklessness to Plaintiff's rights.

104. As a result of the Defendant Officers' misconduct described in this count, Plaintiff suffered loss of liberty, great mental anguish, humiliation, degradation, physical and emotional pain and suffering, and other grievous and continuing injuries and damages.

## COUNT II
## 42 U.S.C. § 1983 – Fourteenth Amendment Violations Against the Defendant Officers

105. Plaintiff incorporates each paragraph of this complaint as if fully restated herein.

106. In the manner described more fully above, the Defendant Officers, while acting individually, jointly, and in conspiracy with each other, as well as under color of law and within the scope of their employment, deprived Plaintiff of his constitutional right to due process, and of his right to a fair trial.

107. Defendant Officers fabricated evidence, including mischaracterizations and material omissions in police reports, probable cause documents, and elsewhere, that was relied upon to arrest and prosecute Plaintiff.

108. In the manner described more fully above, the Defendant Officers failed to disclose, and otherwise withheld and/or suppressed exculpatory information and material evidence from the prosecution, Plaintiff, and Plaintiff's defense counsel during the criminal proceedings, including their own misconduct in fabricating information through mischaracterizations and material omissions in police reports and elsewhere.

109. Had the Defendant Officers disclosed this evidence, it would have cast doubt on the entire police investigation and ongoing prosecution, and led to the end of Plaintiff's detention and prosecution.

110. In addition, on information and belief, the Defendant Officers concealed and fabricated additional evidence that is not yet known to Plaintiff.

111. The Defendant Officers' misconduct described in this count resulted in Plaintiff's unjust and wrongful criminal prosecution and conviction, deprived him of his liberty, and denied him his constitutional rights protected by the Fourteenth Amendment. Absent this misconduct, Plaintiff's prosecution could not

and would not have been pursued.

112. The misconduct described in this count was objectively unreasonable and was undertaken intentionally, with malice, and with reckless indifference to the rights of the others, and with total disregard for the truth and Plaintiff's clear innocence.

113. Without Defendants' fabrication, Plaintiff would never have been arrested, charged, prosecuted, or convicted.

114. As a result of the Defendant Officers' misconduct described in this count, Plaintiff suffered loss of liberty, great mental anguish, humiliation, degradation, physical and emotional pain and suffering, and other grievous and continuing injuries and damages.

**COUNT III**
**42 U.S.C. § 1983 — Failure to Intervene Against the Defendant Officers**

115. Plaintiff incorporates each paragraph of this complaint as if fully restated herein.

116. In the manner described above, during the constitutional violations described above, one or more of the Defendant Officers stood by without intervening to prevent the violation of Plaintiff's constitutional rights.

117. These Defendant Officers had a duty and reasonable opportunity to prevent this harm to Plaintiff, but they failed to do so.

118. The misconduct described in this count was objectively unreasonable and was undertaken intentionally with willful indifference to Plaintiff's constitutional rights.

119. As a result of the Defendant Officers' failure to intervene to prevent the violation of Plaintiff's constitutional rights, Plaintiff suffered loss of liberty, great mental anguish, humiliation, degradation, physical and emotional pain and

suffering, and other grievous and continuing injuries and damages as set forth above.

**COUNT IV**
**42 U.S.C. 1983 - *Monell* Liability Against The City of Los Angeles**

120. Plaintiff incorporates each paragraph of his complaint as if fully restated herein.

121. The policies and customs of the Los Angeles Police Department were responsible for the Defendant Officers' violations of Plaintiff's due process rights.

122. Plaintiff's injuries described in this complaint and the violations of his constitutional rights discussed above were caused by the policies and customs of the City of Los Angeles, as well as by the actions of policy-making officials for the City of Los Angeles.

123. At all times relevant to the events described in this complaint and for a period of time before and after, the City of Los Angeles failed to promulgate proper or adequate rules, regulations, policies, and procedures governing: the collection, documentation, preservation, and disclosure of evidence; including material exculpatory evidence; writing of police reports and taking of investigative notes; obtaining statements and testimony from witnesses; and the maintenance of investigative files and disclosures of those files in criminal proceedings.

124. Officers and agents of the City of Los Angeles committed these failures to promulgate proper or adequate rules, regulations, policies, and procedures.

125. Had officers and agents of the City of Los Angeles promulgated appropriate policies, then the violation of Plaintiff's constitutional rights would have been prevented.

126. In addition, at all times relevant to the events described in this

complaint and for a period of time before, the City of Los Angeles had notice of a practice or custom by officers and agents of the Los Angeles Police Department that included one or more of the following: (1) officers fabricated evidence by including material misrepresentations in police reports; (2) officers failed to disclose material information; (3) officers failed to maintain and/or preserve evidence and/or destroyed evidence; and/or (4) officers pursued wrongful convictions through profoundly flawed investigations.

127. These practices and customs, individually and/or together, were allowed to flourish because the leaders, supervisors, and policymakers of the City of Los Angeles directly encouraged and were thereby the moving force behind the very type of misconduct at issue by failing to adequately train, supervise, and control their officers, agents, and employees on proper documentation techniques and by failing to adequately punish and discipline prior instances of similar misconduct, thus directly encouraging future abuses like those affecting Plaintiff.

128. The above practices and customs, so well settled as to constitute de facto policies of the City of Los Angeles, were able to exist and thrive, individually and/or together, because policymakers with authority over the same exhibited deliberate indifference to the problem, thereby effectively ratifying it.

129. As a consequence, the final policymakers for the City of Los Angeles approved of, adopted, and therefore ratified the actions of the individual Defendant Officers, including their violations of Plaintiff's constitutional rights, making the City of Los Angeles liable for this misconduct. In fact, on information and belief, rather than taking steps to correct the obvious faults and failures with the investigation, including through training or discipline, the final policymakers for the City of Los Angeles further ratified the actions of the Defendant Officers by

continuing to employ them, promote them, and approve of their work related to the prosecution in Plaintiff that resulted in Plaintiff's wrongful conviction.

130. Plaintiff's injuries and the constitutional violations he suffered were caused by officers, agents, and employees of the City of Los Angeles, including, but not limited to, the Defendant Officers, who acted pursuant to one or more of the policies, practices, and customs set forth above in engaging in the misconduct described in this count.

**COUNT V**
**42 U.S.C § 1983 - Conspiracy to Deprive Constitutional Rights Against the Defendant Officers and the Bank Defendants**

131. Plaintiff incorporates each paragraph of his complaint as if fully restated herein.

132. The Defendant Officers and Defendant Sanchez reached an agreement among themselves to falsely implicate and prosecute Plaintiff for identity theft, and thereby to deprive Plaintiff of his constitutional rights, as described above. This agreement was reached before arresting Plaintiff, and it remained in place throughout all periods of his wrongful detention, prosecution, and incarceration.

133. In addition, the Defendant Officers and Defendant Sanchez conspired before Plaintiff's conviction, and continued to conspire after his conviction, to deprive Plaintiff of exculpatory material to which he is entitled and that would have led to his earlier exoneration.

134. In this manner, the Defendant Officers and Defendant Sanchez, acting in concert with each other and with other co-conspirators, known and unknown, conspired by concerted action to accomplish an unlawful purpose and/or a lawful purpose by unlawful means.

135. In furtherance of the conspiracy, each co-conspirator committed overt

acts and was an otherwise willful participant in joint activity.

136. As a result of this illicit prior agreement, Plaintiff suffered loss of liberty, great mental anguish, humiliation, degradation, physical and emotional pain and suffering, and other grievous and continuing injuries and damages as set forth above.

137. The misconduct described in this count was objectively unreasonable and was undertaken intentionally and with willful indifference to Plaintiff's constitutional rights.

138. The Defendants' misconduct described in this count was undertaken pursuant to the City of Los Angeles's policies, which are more fully described above.

**COUNT VI**
**Malicious Prosecution Against the Defendant Officers and the Bank Defendants**

139. Plaintiff incorporates each paragraph of his complaint as if fully restated herein.

140. In the manner described more fully above, the Defendant Officers and Bank Defendnats were instrumental in initiating and maintaining legal proceedings against Plaintiff for a crime he did not commit.

141. The Defendant Officers and Defendant Sanchez had no substantial grounds for believing that Plaintiff was an identity thief because no reasonable person would have believed that Plaintiff was trying to steal his own identity while he was trying to report the identity theft and close the account.

142. Likewise, the Defendant Officers and Defendant Sanchez had no substantial grounds for believing that Plaintiff was an identity thief because no reasonable person would have overlooked the discrepancy in the documents provided by Keirans.

143. Nevertheless, the Defendant Officers and Defendant Sanchez maliciously initiated criminal proceedings against Plaintiff alleging that he was attempting to steal his own identity because they were biased against him.

144. To this end, Defendant Sanchez sought out the police and falsely reported that he was committing a crime.

145. Likewise, the Defendant Officers fabricated evidence by including material misinformation in their police reports, probable cause documents, and elsewhere, and failed to disclose, withheld, and/or otherwise withheld material exculpatory information from the Plaintiff, Plaintiff's defense counsel and the prosecution.

146. The resulting criminal prosecution was ultimately terminated in Plaintiff's favor when his conviction was vacated because he was actually innocent.

**COUNT VII**
**Violation of Right to Privacy Under Art. I of the California Constitution**
**Against the Bank Defendants**

147. Plaintiff incorporates each paragraph of his complaint as if fully restated herein.

148. In the manner described more fully above, the Banks Defendants violated Plaintiff's rights under Art. I of the California Constitution by invading Plaintiff's legally protected privacy interest when they provided Keirans and the Defendant Officers with Plaintiff's personal information.

149. In particular, Defendant Sanchez, while acting within the scope of his employment at U.S. Bank, N.A., provided the Defendant Officers with Plaintiff's California I.D., Social Security Card, and other non-public personal information.

150. Plaintiff had a reasonable expectation of privacy in his social security

number and other personal information under the circumstances, and well-established social norms recognize the need to keep the information in those documents private.

151. Nevertheless, the Bank Defendants reported Plaintiff to the police and provided his California I.D., social security card, and financial information associated with the accounts in his name based on the fact that he could not answer questions set by an identity thief who fraudulently opened the account in his name.

152. This constituted a serious invasion of Plaintiff's privacy interest which subsequently resulted in an investigation and arrest that later led to his wrongful conviction.

**COUNT VIII**
**Violation of the California Right to Financial Privacy Act (Cal. Fin. Code §§ 4052 *et seq.*) against the Bank Defendants**

153. Plaintiff incorporates each paragraph of his complaint as if fully restated herein.

154. In the manner described more fully above, the Bank Defendants violated the California Right to Financial Privacy Act when Defendant Sanchez, acting within the scope of his employment as an employee of U.S. Bank, N.A., provided Keirans with Plaintiff's non-public personal information over the phone without authorization.

155. In the manner described more fully above, the Bank Defendants violated the California Right to Financial Privacy Act when Defendant Sanchez, acting within the scope of his employment as an employee of U.S. Bank, N.A., provided the Defendant Officers with Plaintiff's California I.D., social security card, and financial information related to the account opened in his name without authorization.

156. When Defendant Sanchez did so, he was not acting pursuant to a legitimate law enforcement inquiry because it was his unlawful disclosure of information that initiated the subsequent investigation.

WHEREFORE, Plaintiff WILLIAM WOODS respectfully requests that this Court enter judgment in his favor and against Defendants, awarding compensatory damages, attorneys' fees, and costs against each Defendant, and punitive damages against each of the Individual Defendants, as well as any other relief this Court deems appropriate including but not limited to injunctive or other non-monetary equitable relief.

**JURY DEMAND**

Plaintiff, WILLIAM WOODS, hereby demands a trial by jury pursuant to Federal Rule of Civil Procedure 38(b) on all issues so triable.

Respectfully submitted,

**WILLIAM WOODS**

BY: /s/ David B. Owens

*One of Plaintiff's attorneys*

David B. Owens (SBN 275030)
University of Washington School of Law
Civil Rights and Justice Clinic
C/O LOEVY & LOEVY
333 S. Grand, Suite 3310
Los Angeles, CA 90071
david@loevy.com

*Counsel for Plaintiff*